Cricket JOHNSON, by her parents,
Edward and Carolyn Johnson,
Plaintiff,

v.

CLEARFIELD AREA SCHOOL
DISTRICT, et al,
Defendants.

No. CIV.A. 3:02–36J.

United States District Court,
W.D. Pennsylvania.

May 18, 2004.

David C. Long, Esq., Oliveburg, PA, Michael L. Rosenfield, Pittsburgh, PA, for plaintiff.

Carl P. Beard, Esq., Roberta Binder Heath, Esq., Andrews & Wagner, Altoona, PA, Michael J. Seymour, Esq., Feczko & Symour, Pittsburgh, PA, Martin A. Dietz, Esq., Anthony M Mariani, P.C., Pittsburgh, PA, for defendants.

### *MEMORANDUM OPINION AND ORDER*

GIBSON, District Judge.

This case comes before the Court on Plaintiffs' Petition to Approve Compromise Settlement and Distribution (Document No. 36). In consideration of the Plaintiffs' Petition and the record of court in the case, the Court shall deny the Plaintiffs' Petition to Approve Compromise Settlement and Distribution without prejudice to renew the motion.

### JURISDICTION

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. Specifically, the Plaintiffs' cause of action arises under 42 U.S.C. § 1983 and 20 U.S.C. § 1681, *et seq.*

### BACKGROUND

On behalf of their minor daughter, Cricket Johnson, Edward and Carolyn Johnson (hereinafter "Plaintiffs") alleged that Cricket Johnson, a 14–year–old female, had been denied a free appropriate public education by the Clearfield Area School District, (hereinafter "the District") and a number of its supervisors and directors ("the individual defendants"). (Document No. 1). In particular, the Plaintiffs allege that pursuant to 42 U.S.C. § 1983, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, the Rehabilitation Act of 1973 ("the Rehab Act"), 29 U.S.C. § 794, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, the District and the individual defendants (hereinafter "Defendants") failed to provide Cricket Johnson with educational services required by law.[1] The parties to the above-captioned civil action have now reached an agreement of settlement of the action. (Document No. 36).

Accordingly, pursuant to Local Rule of Civil Procedure 17.1, Edward and Carolyn Johnson, on behalf of their daughter, have filed an unopposed petition for leave to compromise the minor's claims. The proposed distribution is as follows: (1) Plaintiffs, on behalf of their minor daughter, will accept the sum of $67,500.00 inclusive of all costs; (2) payment of attorneys' fees of $26,000.00, based upon a 40% contingency fee; and (3) payment of $3,229.00 to the attorneys for costs. The proposed distribution would result in $38,271.00 being

---

1. In a court order dated February 26, 2003, the Defendants' Motion to Dismiss (Document No. 5) was granted in part as to the Plaintiff's request for punitive damages against the District and denied in all other aspects. (Document No. 17). Furthermore, Defendant Cox' Motion to Dismiss as to Count V was granted by the court. *Id.* Specifically, the court granted Cox' Motion to Dismiss the Plaintiff's claim seeking redress for the Defendants' alleged violation of the ADA. *Id.* Defendant Cox challenged her inclusion in the ADA claim, and the court, determining that the Plaintiff failed to respond to Cox' Motion and that the Plaintiff's averments at Count V did not purport to state a § 1983 claim against Defendant Cox, granted Defendant Cox' Motion to Dismiss as to Count V. *Id.* at fn. 2.

placed in trust with The Family Trust for the lifetime of Cricket Johnson.

## DISCUSSION

■ In a federal civil rights action, the Court looks to state law to determine the fairness of a minor's compromise.[2] *Nice v. Centennial Area School District,* 98 F.Supp.2d 665, 669 (E.D.Pa.2000). Thus, even though Local Rule 17.1 provides for court approval of a settlement of a minor's claim and any distribution of funds created by that settlement, including attorneys' fees, this Court shall, in accordance with other case law, apply state procedural law to the case *sub judice.*[3]

■ Pennsylvania Rule of Civil Procedure 2039(a) provides in relevant part that "[n]o action to which a minor is a party shall be compromised, settled, or discontin-ued except after approval by the court pursuant to a petition presented by the guardian of the minor." Pa.R.Civ.P. 2039(a). "Thus, the [Pennsylvania] courts were given the mandate to supervise all aspects of settlements in which a minor is a party in interest, ... and in considering whether to approve a settlement, the Court is charged with protecting the best interests of the minor." *Power By Power v. Tomarchio,* 701 A.2d 1371, 1374 (Pa.Super.1997) (internal citations omitted) (quoted in *Nice,* 98 F.Supp.2d at 669). In considering petitions to approve compromise settlement and distribution, the court must assess the following: (1) the sufficiency of the petition; (2) the fairness of the proposed settlement amount; and (3) the reasonableness of the requested counsel fees. *See Calvert,* 2000 WL at *5–6.

---

**2.** The Court observes that in *Calvert v. General Acc. Ins. Co.,* 2000 WL 124570, *5 fn. 2, (E.D.Pa.2000), the court determined that no law existed interpreting or applying the Eastern District of Pennsylvania Local Rule of Civil Procedure 41.2(a) which provided that "[n]o claim of a minor ... in which a minor ... has an interest shall be compromised, settled, or dismissed unless approved by the court." Nevertheless, the court in *Calvert* explained that although it had diversity jurisdiction under *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and it must apply state procedural law, Pennsylvania Rule of Civil Procedure 2039(a), that it applied Pa.R.Civ.P.2039(a) because "it impacts the substantive rights of the parties." *Calvert,* 2000 WL at *5.

Similarly, the court in *Nice v. Centennial Area School District,* 98 F.Supp.2d 665, 669 (E.D.Pa.2000), also noted that where a federal court has jurisdiction based upon federal law, the federal court must apply state procedural law for the following reason:

... nothing in 42 U.S.C. §§ 1983–1988 supplies the rule of decision by which a minor's compromise of a civil rights claim should be reviewed by the court. Nor does the manner by which the settlement is approved implicate a federal interest or show a need for national uniformity. In contrast, under our federal system, matters of con-cern to the family unit, including the well-being of minors, traditionally have been of utmost interest to the individual states. [citations omitted]. Because of this interest, state law is usually well-defined and developed in this area. Accordingly, the court holds that, under [Eastern District of Pennsylvania] Local Rule 41.2, in a federal civil rights action, it is appropriate to apply the rule of decision prescribed by state law in determining the fairness of a minor's compromise and the reasonableness of any attorneys' fees allocated from that settlement. *Nice,* 98 F.Supp.2d at 669.

**3.** This Court notes that the Western District of Pennsylvania Local Rule of Civil Procedure 17.1 provides that "[n]o action to which a minor is a party shall be compromised, settled, discontinued or dismissed except after approval by the court pursuant to a petition presented by the guardian of the minor ...." Nevertheless, this Court shall also apply Pennsylvania substantive law with regard to the petition to approve settlement in the above-captioned matter as the Commonwealth's jurisprudence in this area is well-developed, and Pennsylvania where the alleged civil rights violations occurred clearly has an interest in safeguarding the affairs of minor litigants. *See Nice, supra; see generally Calvert, supra; Stecyk v. Bell Helicopter Textron, Inc.,* 53 F.Supp.2d 794 (E.D.Pa.1999).

## A. Sufficiency of the Petition

A petition for approval must provide to the court sufficient information upon which the court may base its determination. *See Sligh v. Friskies Petcare Co., Inc.,* 2001 WL 1549544 (E.D.Pa.2001); *see also Calvert, supra.* In order to "assure that the minors' best interests are protected, the petition should include all relevant facts and the reasons why the minors' guardian believes the settlement is desirable and why it is in the minors' best interest to settle the action." *Calvert,* 2000 WL at *5 (*citing Collier v. Officer,* No. CIV.A. 98–3261, 1998 WL 666036, at *1 (E.D.Pa. Sept.24, 1998)). Such relevant facts include a description of the minor's physical and/or psychological condition, a statement and/or discussion regarding the minor's current physical and/or mental health needs, evidence of the extent of the minor's condition, and the need for future medical and/or psychological care, as well as future expenses. *See Calvert, supra,* at *5; *Nice, supra,* at 670; *Roghanchi v. Rorick,* 1991 WL 275626 at *3 (E.D.Pa. Dec.23, 1991).

In the case *sub judice,* the Plaintiffs have not supplied the Court with an affidavit stating the present physical and/or mental condition of their minor daughter. *See Sligh, supra* at *3. The Court does not have a detailed description of the minor's mental and physical condition, or sufficient discussion of the educational needs of the minor. The Court also observes that the Plaintiffs have not submitted sufficient educational or medical records for the minor. Such evidence is necessary for the Court to understand the minor's need for future educational or medical care and other future expenses. In fact, the Plaintiffs have not offered the Court any statement regarding their approval of the proposed settlement agreement and distribution, or why the proposed settlement agreement is

desirable. *See Henderson ex rel. Bethea v. Nationwide Mut. Ins. Co.,* 2001 WL 43648 at *1 (E.D.Pa.2001). The Court determines that such evidence is necessary in order to assure that the minor's best interests are protected. Therefore, the Court concludes that Plaintiffs' Petition to Approve Compromise Settlement and Distribution does not include sufficient information upon which the Court can base its approval of the petition.

## B. Fairness of the Proposed Settlement Amount

Generally, the "parties and counsel are . . . in the best position to evaluate the settlement and their judgments are entitled to considerable weight." *Calvert,* 2000 WL at *5 (*quoting Chambers v. Hiller,* No. CIV.A. 88–3128, 1988 WL 130679, at *2 (E.D.Pa. Dec.2, 1988)). Nevertheless, in supervising settlements in order to ensure that minor litigants receive a fair settlement under the circumstances, the courts must make an independent evaluation with regard to the fairness of the settlement value to the minor. *See Collier,* 1998 WL at *1.

In the case *sub judice,* the Court notes that the total settlement amount is $67,500.00, yet only $38,271.00 has been earmarked for the minor, "who is the real party in interest". *Sligh,* 2001 WL at *2. Although it is difficult for the Court to quantify an appropriate settlement amount under the facts of this case, it appears that the amount agreed to between the parties is reasonable, however, it is less clear that the minor's portion of that settlement is proper and reasonable. Notwithstanding the insufficiency of the petition, the Court questions whether $38,271.00 is a reasonable portion of the settlement amount where the minor child has a "mental disability that qualifies her for [lifetime] services of Achieva, formerly 'Association of

Retarded Citizens'". (Document No. 36). Indeed, the Plaintiffs' Petition appears to suggest that the minor child will require lifetime care as evidenced by The Family Trust created to hold her portion of the settlement amount in trust for her lifetime, but only available for distribution when she reaches the age of 18. · *Id.* Certainly the minor's status and needs must be considered when reviewing the reasonableness and fairness of the proposed settlement agreement.

Nevertheless, the Court notes that the parties and the attorneys are in the best position to evaluate the terms of the settlement. In fact, the Court observes that the parties to the negotiation process are sophisticated parties. For example, based upon our review of the prior pleadings by the parties in this civil action, the Court notes that the parties have filed various motions to dismiss, as well as responses thereto. Some of these pleadings have been . voluminous and have explored complicated legal issues. Additionally, the Court is aware that the parties discussed the possibility of settlement in the past; however, until the latest settlement discussion, those attempts failed to reach a resolution. (Document Nos. 20 & 23). Presuming that the parties to this civil action and the counsel representing them are in the best position to evaluate the settlement amount, the Court affords their judgments considerable weight. *See Calvert, supra* at

* 6; *Chambers, supra,* at *2. However, in consideration of all of the above factors, the Court determines that it does not have sufficient information about the minor's physical and mental condition and educational needs to determine if a net settlement of $38,271.00 to the minor is fair and proper under the circumstances. Therefore, based upon the information currently available to the .Court, we find that the proposed settlement agreement and distribution does not sufficiently protect the best interests of the minor. This finding is made without prejudice and the Plaintiffs are granted leave to renew their motion.

## C. Reasonableness of the Requested Attorneys' Fees

■ Under Pa.R.Civ.P.2039(b), "[w]hen a compromise or settlement has been so approved by the court, ... the court, shall make an order approving or disapproving any agreement entered into by the guardian for the payment of counsel fees and other expenses out of the fund created by the compromise ...." Pa.R.Civ.P.2039(b).[4] Pennsylvania law also requires that a two-step process be employed when determining the reasonableness of attorneys' fees and costs to be paid out of the settlement fund. *See Nice,* 98 F.Supp.2d at 670.

This two-step process was promulgated by the Pennsylvania Superior Court in *Gilmore by Gilmore v. Dondero,* 399

---

**4.** The Court interprets this plain language of Local Rule 17.1 to be restrictive in that a court may only review the reasonableness of requested attorneys' fees if those fees are to be "out of the fund created by the compromise ..." Local Rule 17.1. Comparatively, Pa.R.Civ.P.2039(b) has also been interpreted to provide that where attorneys' fees and costs "were to be paid with moneys not drawn from the fund established for the benefit of a minor or minors, the Court has discretion only where attorneys' fees are to be paid out of the settlement fund." *Calvert,* 2000

WL at *6 (*citing Robinson v. SEPTA,* 150 Pa.Cmwlth. 211, 615 A.2d 880, 882 (1992)).

In the case *sub judice,* the petition explicitly states that the attorneys' fees and costs shall be drawn directly from the settlement amount, thereby leaving the Plaintiff with the remainder to be held in a Family Trust. (Document No. 36). Accordingly, the Court may evaluate the reasonableness of the request for attorneys' fees pursuant to Pa.R.Civ. P.2039(b) and Local Rule 17.1 as both have been interpreted to include the same discretionary requirement.

Pa.Super. 599, 582 A.2d 1106, 1109–1110 (Pa.Super.1990). Initially, the court must consider "whether the court of common pleas in the county with jurisdiction over the minor has adopted a presumptive lodestar [5] for fees involving the settlement of a minor's claims". *Nice,* 98 F.Supp.2d at 670 (*citing Gilmore,* 582 A.2d at 1109–1110). Then, if the court of common pleas does have a presumptive lodestar, the court "may adjust that lodestar depending upon the effectiveness of the counsel's performance under the circumstances." *Nice,* 98 F.Supp.2d at 670.

◼ Pursuant to the contingent fee agreement, Plaintiffs' counsel has requested attorneys' fees in the amount of approximately 40% of the proposed settlement amount. The Court notes that under "Pennsylvania law, when a trial judge determines the amount of reasonable attorneys' fees in cases involving minors, the judge is not bound to all the terms of a contingency fee agreement." *Sosenke v. Norwood,* No. 91–2623, 1993 WL 512824, at *3 (E.D.Pa.Dec.6, 1993) (*citing Estate of Murray v. Love,* 411 Pa.Super. 618, 602 A.2d 366 (1992))(quoted in *Stecyk,* 53 F.Supp.2d at 800). Thus, even though a

contingency agreement exists, the Court will still follow the two-step process previously discussed.

◼ Looking to Pennsylvania law, the Court notes that the Court of Common Pleas of Clearfield County has jurisdiction over the minor, Cricket Johnson.[6] However, the Court of Common Pleas of Clearfield County, Rules of Civil Procedure and/or Orphans' Court Rules do not provide for a presumptive lodestar with regard to fees involving settlement of a minor's claims.[7] Under these circumstances, in order to determine the reasonableness of the requested attorneys' fees, the Court will look to Pennsylvania case law for policies underlying a presumptive lodestar for such cases, and the Court will examine the effectiveness of the counsels' performance with the factors applied in *Nice, supra.* Indeed, the authority given to this Court pursuant to Local Rule 17.1 and Pa.R.Civ. P.2039 require the Court "[t]o strike a balance between being a 'passive pro forma rubber stamp' . . . and being too intrusive in its consideration of counsel fees." *Collier,* 1998 WL at *2 (*quoting Gilmore,* 582 A.2d at 1109)(*cited in Stecyk,* 53

---

**5.** A lodestar is defined as "[a] reasonable amount of attorney's fees in a given case, usu. calculated by multiplying a reasonable number of hours worked by the prevailing hourly rate in the community for similar work, and often considering such additional factors as the degree of skill and difficulty involved in the case, the degree of its urgency, its novelty, and the like. ● Most statutes that authorize an award of attorney's fees use the lodestar method for computing the award." *Black's Law Dictionary,* Seventh Edition, at 952 (1999).

**6.** Clearfield Area School District where the minor resides is located in Clearfield County at P.O. Box 710, Clearfield, Pennsylvania, 16830.

**7.** The Court observes that various other counties in Pennsylvania have adopted a presumptive lodestar for fees involving the settlement of a minor's claims. *See Nice,* 98 F.Supp.2d, at 670–671 (adopting the presumptive lodestar of twenty-five percent promulgated by the Court of Common Pleas of Bucks County); *Stecyk,* 53 F.Supp.2d at 801 (adopting the Delaware County presumptive lodestar of twenty-five percent); *Gilmore v. Dondero,* 399 Pa.Super. 599, 582 A.2d 1106, 1109–1110 (1990), aff'd, 37 F.3d 1489 (3d Cir.1994) (approving trial court's application in determining fee award, of the then in place Chester County Court of Common Pleas local rule providing for a 25% presumptive lodestar); and *Henderson ex rel. Bethea,* 2001 WL at *2 (adopting the Philadelphia County local rule providing for a presumptive lodestar of one-third of the amount of the net fund recovered).

F.Supp.2d at 800–801). Accordingly, the Court is obligated to evaluate the reasonableness of the requested attorneys' fees with regard to protecting the substantive rights of the minor child in the case *sub judice.*

In the Pennsylvania case, *Gilmore v. Dondero, supra,* the reasonableness of requested attorneys' fees was examined by the Superior Court. Specifically, the Superior Court reviewed an order by the Court of Common Pleas of Chester County which reduced the amount of counsel fees payable out of the settlement amount of a compromise of a minor's claim. The Superior Court reviewed the policy underlying the presumptive lodestar applied by the Chester County court, which was described by the Chester County court as follows:

> Preliminarily, we are mindful that counsel have a right to be compensated for their services. But at the same time, when that compensation becomes so handsome as to constitute a patent windfall for a lawyer, to the unfair detriment of the minor, discretion is best exercised by decreasing that fee. Generally, this court is reluctant to poke its judicial nose into contracts between clients and counsel, and even with the situation involving the rights of a minor, we are reluctant to be too intrusive, too assertive. But under our Rule 2039 mandate, we have an affirmative duty to be more than a passive pro forma rubber stamp. The line must be drawn somewhere .... the Board of Judges of this county has considered the question, and we conclude that an appropriate presumptive lodestar for such cases, for suit having been filed, as at bar, should be 25% of the gross amount obtained.

*Gilmore,* 582 A.2d at 1109 (quoting *Edwards v. Downington Area School District,* 34 Ches.Co.Rep. 346 (1986)). The Superior Court noted the seriousness with which the Chester County Court viewed its responsibilities under Rule 2039. *Id.*

This Court takes a similar approach regarding the seriousness of its duties to the minor child in the case *sub judice.* Additionally, this Court notes that where no local rule of procedure exists governing a specific action in orphans' court, the Pennsylvania Superior Court has applied state procedure. For example, in *In re Adoption of Hamilton,* 362 Pa.Super. 249, 523 A.2d 1176, 1177 (1987) the Superior Court stated the following with regard to an action in Clearfield County Orphans' Court:

> Since there are no local orphans' court rules in Clearfield County governing the filing of exceptions or decrees nisi, the court and parties should have followed the procedure in equity cases. Pennsylvania Rule of Civil Procedure 1517 provides that in equity actions, the court shall proceed by entering an adjudication including a decree nisi.

*Id.* at 1177. Therefore, the Court determines that since Clearfield County does not have a presumptive lodestar, then the Court will take into consideration those factors employed under a Pa.R.Civ.P.2039 analysis.

Pursuant to the court's interpretation and application of Pa.R.Civ.P.2039 in *Nice,* 98 F.Supp.2d at 671 (*citing Gilmore, supra*), the effectiveness of counsels' performance is evaluated by the following factors: (1) the amount of work performed; (2) the character of the services rendered; (3) the difficulty of problems involved; (4) the importance of the litigation; (5) the degree of responsibility incurred; (6) whether the fund involved was "created" by the attorney; (7) the professional skill and standing of the attorney in her profession; (8) the result the attorney was able to obtain; (9) the ability of the client to pay a reasonable fee for the services ren-

dered; and (10) "very importantly" the amount of money in question. *Nice,* 98 F.Supp.2d at 671 (*cited in Henderson ex rel. Bethea,* 2001 WL at \*2).

■ In the case *sub judice,* the Court initially notes that this civil action lasted a little over two years.[8] At the time the Plaintiffs filed the petition to approve the settlement agreement, the petition states that the procedural posture of the case was that the parties were still in the discovery phase. (Document No. 36).

The petition also reveals that the Plaintiffs' attorneys did not expend time drafting the trust agreement for the minor child as it appears to have been provided by The Family Trust. (Document No. 36). However, the record demonstrates that the Plaintiffs' attorneys made efforts to resolve the case based upon a directive of the court. Even though the parties were unable to reach an agreement pursuant to the court's directives, this indicates that the Plaintiffs' attorneys participated in status conferences and/or settlement discussions. In addition, taking the case on a contingent fee basis, Plaintiffs' counsel "ran the risk that they might obtain no recovery, and consequently no compensation under the fee agreement." *Cross v. National R.R. Passenger Corp.,* Civ. No. 98–cv–5624, 1999 WL 554593, \*3 (E.D.Pa. June 14, 1999) (*cited in Henderson ex rel. Bethea,* 2001 WL at \*3).

Plaintiffs' counsel have also stated that they spent "in excess of 100 hours representing plaintiffs in this matter." (Docu-

ment No. 36). Additionally, "they expended $3,229.00 in costs." *Id.* Unfortunately, the Plaintiffs' counsel have not provided the Court with an adequate description or documentation of the hours expended in furtherance of this civil action. For instance, there is no description in the Plaintiffs' petition about what documents were reviewed and/or prepared by counsel. Nor is there any description of the time spent researching various legal issues. In fact, there is no description, or definite information as to the hours devoted to specific activities. Thus, the Court concludes that while it is not necessary to know the specific amount of time committed to a precise project, some level of "specificity of records is required to support a request for attorney's fees", such as how many hours were devoted to various general activities. *Stover v. Riley,* 30 F.Supp.2d 501, 504 (E.D.Pa.1998)[9]; *see also Pawlak v. Greenawalt,* 713 F.2d 972, 978 (3d Cir.1983).

Furthermore, the Court does not find any documentation regarding the hourly rate normally charged by Plaintiffs' counsel. The petition simply states that over 100 hours were expended in this matter, and a 40% contingency fee contract was entered into between the Plaintiffs and Plaintiffs' counsel. However, in order for the Court to determine the reasonableness of the request for attorneys' fees, some quantifying measure of reasonable hourly rates must be provided to the Court by the Plaintiffs.

---

8. Plaintiffs filed their complaint with the Western District Court of Pennsylvania on January 31, 2002, (Document No. 1), and they filed their Petition to Approve Compromise Settlement and Distribution on April 8, 2004. (Document No. 36).

9. The Court notes that while *Stover, supra,* involved a calculation of attorneys' fees in a Title VII action, the calculation of the lodestar

is similar to the case *sub judice* in that in both cases the following factors are relevant to the calculation and award of reasonable attorneys' fees: (1) counsel are to be compensated for the number of hours contributed to the case; and (2) counsel are to be compensated according to the professional skill and standing of the attorney, i.e., a reasonable hourly rate charged by the attorney.

Applying all of the above factors to the case *sub judice*, the Court determines that with regard to the reasonableness of the request for attorneys' fees, the Plaintiffs' petition is deficient. Pa.R.Civ.P.2039 requires this Court to protect the interests of the minor child, and the petition before the Court today does not satisfy the Court's concerns addressed in this Memorandum.

### *ORDER*

**AND NOW**, this 18th day of May, 2004, upon consideration of the Plaintiffs' Petition to Approve Compromise Settlement and Distribution, **IT IS HEREBY ORDERED** that the Plaintiffs' Petition is denied without prejudice, and leave to renew is granted in accordance with the Court's Memorandum Opinion of this date.